IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ADRIAN L. JACKSON,** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| V. ) | Civil No. **03-540-JPG** |
| ) | |
| **STEPHEN D. MOTE,** ) | |
| ) | |
| Respondent. ) | |

## REPORT AND RECOMMENDATION

This Report and Recommendation regarding Adrian L. Jackson's amended petition for writ of habeas corpus **(Doc. 24)** is respectfully submitted to U.S. District Judge J. Phil Gilbert pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).

In 1997, a jury found petitioner Jackson guilty of residential burglary and unlawful possession of a weapon by a felon, and he was subsequently sentenced to 15 years imprisonment for the burglary charge and seven years imprisonment for the gun charge. ***People of the State of Illinois v. Jackson*, No. 97-CF-429 (Ill. 20th Cir. (St. Clair County) 1997) (The Honorable Stephen M. Kernan presiding).** At present, petitioner is on parole.

### Synopsis of the Underlying Criminal Case[1]

Petitioner/defendant Jackson had repaired the roof of Nathaniel and Susie Morgan's house in East St. Louis, Illinois. According to Mr. Morgan, he had paid petitioner $100, but a

---

[1]The factual synopsis is gleaned from the Fifth District Appellate Court's Rule 23 Order denying petitioner's direct appeal, as well as petitioner's brief. **(*See* Doc. 79-6, Rule 23 Order, Nov. 10, 1999; and Doc. 25, pp. 1-5).** For the purposes of habeas review, the state court's factual findings are presumed to be correct; petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. ***See* 28 U.S.C. S 2254(e)(1).**

few months later petitioner spotted Mr. Morgan working in his yard and asked for additional money for the work. Several neighbors witnessed the men arguing. When Mr. Morgan retrieved a gun from the house, petitioner left. According to neighbor Elaine Stewart, petitioner stated that if he did not get his money "something would happen like the houses on that side of the street would blow up." Neighbor Darrell Johnson testified that he knew petitioner and petitioner had told him after the argument that he was going to steal Mr. Morgan's gun.

Later in the afternoon, after the argument, Mrs. Morgan was in the bedroom of the house and heard a stranger's footsteps; she saw petitioner exiting through the back door of the house, carrying her husband's gun and some clothing. However, Mrs. Morgan also indicated the intruder's face was partially obstructed by the clothing he was carrying. However, neighbors Gloria Amerson and her two sons, Calvin and Darrell, testified they saw petitioner exiting the Morgan's residence carrying clothes and a firearm– which was discharged into the air. Another neighbor, Michele Cartwright, testified that she also saw petitioner jump the Morgan's back fence, carrying something brown. Cartwright also testified she later identified petitioner when the police had him in their squad car. Police officers testified that when they went to the residence where petitioner lived with his mother and other relatives, they found Mr. Morgan's clothes– a tan jacket and pair of jeans– on the back porch. Petitioner's brother testified that petitioner had put the clothing there.

At trial, petitioner testified that he had argued with Mr. Morgan about not being paid the full amount owed for the roofing work he had performed. Petitioner thought the agreed price for the work was $300. According to petitioner, he simply returned to his home, and the police arrived approximately 35 minutes later. Petitioner denied mentioning the gun to Darrell Johnson

and commenting to Elaine Stewart about blowing anything up. Petitioner also denied returning to the Morgan's home and stealing the gun, and he further denied having ever seen Mr. Morgan's jacket and jeans.

On cross-examination, the prosecutor, Assistant State's Attorney Steve Sallerson, repeatedly asked the defendant to state whether the State's witnesses were either lying or incorrect. After the prosecutor had asked about five witnesses, defense counsel, Kelly Sullivan, objected for the first and only time on this issue– complaining about the use of the word "lying." The prosecutor agreed to rephrase the question, and he used the word "incorrect" instead.

During closing argument, the prosecutor stated several times that, in order to find petitioner not guilty, it had to disbelieve all of the State's witnesses. Defense counsel did not object.

A jury found petitioner guilty of both charges. On direct appeal petitioner raised the following issues:

1. The prosecutor conducted improper cross-examination and made improper statements in closing argument regarding petitioner's opinion of the State's witnesses' veracity; and

2. Petitioner's trial counsel was ineffective for failing to object to the prosecutor's line of questioning and comments.

**(Doc. 79-3).** Although the Fifth District Appellate Court agreed that the prosecutor's line of questioning was improper, but ultimately concluded that there was insufficient prejudice given the overwhelming evidence against petitioner. Petitioner's conviction was therefore affirmed. **(Doc. 79-6).** The Illinois Supreme Court denied petitioner leave to appeal the aforementioned issues. **(Docs. 79-7 and 79-8).**

Petitioner's state post-conviction petition raised the following grounds:

1. The trial judge refused to limit the arguments used by the prosecutor as to petitioner's criminal record;

2. The trial judge allowed evidence of petitioner's criminal record to be submitted to the jury during deliberations;

3. The trial judge intentionally appointed incompetent counsel to represent petitioner at trial and on post-judgment proceedings;

4. The prosecutor and the trial judge violated petitioner's rights by striking the African-American members of the venire;

5. The prosecutor placed all of the witnesses in one room so as to coerce their testimony to be the same;

6. The prosecutor held petitioner up to ridicule by asking the jury whether petitioner was lying;

7. The prosecutor used hearsay reports at trial;

8. A prosecution witness laughed at petitioner;

9. The transcript of the proceedings in the trial court was altered or is incomplete and misleading;

10. The mittimus of the trial court's sentence failed to give petitioner credit for time served in custody before sentencing; and

11. Petitioner received ineffective assistance of trial counsel:

    A. Trial counsel allowed the prosecution to use defense witnesses as prosecution witnesses;

    B. Trial counsel failed to file a motion to suppress evidence;

    C. Trial counsel failed to notify petitioner that the trial judge directed counsel not to file any motions for petitioner; and

    D. Trial counsel failed to impeach witnesses as petitioner had directed.

**(Doc. 79-9).**

Circuit Judge Robert J. Hillebrand dismissed the pro se post-conviction petition, finding

the issues procedurally waived and or res judicata and barred from consideration.  **(Doc. 79-13, pp. 19-22).**   The dismissal was affirmed on appeal.  **(Doc. 79-14).**  The appellate court found the petition procedurally and legally insufficient, in that it was based entirely on bald assertions, unsupported by the record, affidavits or other evidence.  Although there was a question earlier in this action as to whether petitioner had sought leave to appeal to the Illinois Supreme Court, it is now uncontested that petitioner failed to apply to the State Supreme Court.  **(*Compare* Docs. 65 and 79-1 *to* Docs.  25 and 89).**

## The Issues

Petitioner brought the above-captioned petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, raising the following points of error:

1. The trial judge allowed the introduction of plaintiff's criminal record to prove the gun charge, in violation of petitioner's right to due process under the Fifth Amendment;

2. The trial court, the prosecutor and defense counsel pooled an all white jury in violation of petitioner's right to equal protection under the Fourteenth Amendment;

3. The prosecutor had all the State's witnesses wait together before testifying in order to coerce or manipulate their testimony, in violation of petitioner's right to due process  under the Fifth Amendment, and his right to a fair trial under the Sixth Amendment;

4. The trial judge improperly instructed the jury regarding the gun charge, mistakenly instructing them that they must find that petitioner was previously convicted of a felony, in violation of petitioner's right to due process under the Fifth Amendment;

5. The prosecutor repeatedly asked petitioner to comment on the veracity of the State's witnesses, and commented during closing argument that in order to find petitioner guilty the jury would have to conclude that all of the State's witnesses had lied, all in violation of petitioner's right to due process under the Fifth Amendment; and

  6.  Petitioner's counsel was ineffective in failing to timely object to the prosecutor's line of questioning and comments regarding the veracity of he State's witnesses, in violation of petitioner's right to counsel under the Sixth Amendment.

**(Docs. 24 and 25).**

## Procedural Prerequisites

As a preliminary matter, it must be understood that petitioner must clear two procedural hurdles <u>before</u> the Court may reach the merits of his habeas corpus petition: exhaustion of remedies and procedural default. ***Rodriguez v. Peters*, 63 F.3d 546, 555 (7th Cir. 1995).**

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." ***O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).** "[S]tate prisoners must give the state court one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." ***Id.*; see also 28 U.S.C. § 2254(c).**  In *O'Sullivan v. Boerckel* the Supreme Court of the United States specifically addressed exhaustion under Illinois' two-tiered appellate process, holding that issues must be raised not only to an intermediate appellate court, but also to the Illinois Supreme Court, which offers discretionary review (except under a limited number of special circumstances, which are not applicable to this case). ***O'Sullivan*, 526 U.S. at 843-846.**

The "fair presentment" doctrine requires that a petitioner give state courts a meaningful opportunity to pass upon the substance of the claims later pressed in federal court. ***Howard v. O'Sullivan*, 185 F.3d 721, 725 (7th Cir. 1999).**  For a constitutional claim to be fairly presented to a state court, both the operative facts and the "controlling legal principles" must be submitted. ***Picard v. Connor*, 404 U.S. 270, 277 (1971).**  "At bottom, the task of the habeas court in adjudicating any issue of fair presentment is assessing, in concrete, practical terms, whether the

state court was sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve that issue on a federal basis." **Verdin v. O'Leary**, 972 F.2d 1467, 1476 (7th Cir. 1992).

There is another way a claim may be procedurally defaulted– "[i]n general, federal courts 'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" **Aliwoli v. Gilmore**, 127 F.3d 632, 635 (7th Cir. 1997) (*citing Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). In the habeas context, this doctrine applies to bar consideration of any of a petitioner's federal claims which a state court declined to address because the petitioner failed to meet a state procedural requirement. **See Braun v. Powell**, 227 F.3d 908, 912 (7th Cir. 2000). To be an adequate ground of decision, the state's procedural rule must be both "firmly established and regularly followed." **Ford v. Georgia**, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348 (1984); *see also Braun v. Powell*, 227 F.3d 908, 912 (7th Cir. 2000). In order for this doctrine to apply, the last state court rendering judgment must rest its judgment on procedural default and make a plain statement that it was relying either alone, or in the alternative, on the state procedural bar. **Harris v. Reed**, 489 U.S. 255, 265 (1989). However, no procedural default occurs if the state court's alternative finding constitutes a finding on the merits. **Robertson v. Hanks**, 140 F.3d 707, 709 (7th Cir. 1998).

### Merits Review

The merits of those issues not procedurally defaulted are reviewed using the following standard:

> Under the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d)(1), habeas relief may be granted if the decision of the state court "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" In *Williams v. Taylor*, 529 U.S. 362, 405, 407, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Court explained that a state court decision is "contrary to" Supreme Court precedent if the "state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at an opposite result. An unreasonable application of Supreme Court precedent occurs when "the state court unreasonably applies it to the facts of the particular state prisoner's case" or "unreasonably extends a legal principle ... to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." To be unreasonable, the decision of the state court must not be simply incorrect or erroneous, it must have been "objectively unreasonable." *Wiggins v. Smith*, --- U.S. ----, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).

*Johnson v. Bett*, 349 F.3d 1030, 1034 (7th Cir. 2003).

## Analysis

Petitioner has exhausted all available avenues of relief through the state system, in that he is time barred from further pursuing the alleged constitutional errors in a state post-conviction proceeding. (*See* **725 ILCS 5/122-1(c))**. Nevertheless, respondent correctly observes that issues 1, 2 and 3– regarding introduction of his criminal record, the all white jury, and all witnesses being placed in one room– are procedurally defaulted. Although issues 1, 2 and 3 were generally raised in the post-conviction petition, petitioner did not give the Illinois Supreme Court an opportunity to pass on those issues, as required by *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-846 (1999).

In addition, issue 1, regarding introduction of petitioner's criminal record, and the issue

8

regarding the all white jury, are procedurally defaulted because in the post-conviction proceedings the trial court deemed them forfeited because they were not raised on direct appeal. **(*See* Docs. 79-3, 79-11, pp. 2-3 and 79-14, p. 3).** Such a forfeiture constitutes an independent and adequate state law ground, precluding review of the constitutional aspects of those issues. *Harris v. Reed*, **489 U.S. 255, 265 (1989)**; *Braun v. Powell*, **227 F.3d 908, 912 (7th Cir. 2000).** That procedural requirement is well established under Illinois law, and so recognized by the United States Court of Appeals for the Seventh Circuit. *See People v. Lucas*, **787 N.E.2d 113, 118 (Ill. 2003);** *People v. West*, **719 N.E.2d 664, 669-670 (Ill. 1999); and** *Martin v. Evans*, **384 F.3d 848, 854-855 (7th Cir. 2004).**

A petitioner can circumvent these procedural bars to review if he or she is able to demonstrate cause for the procedural error and establish prejudice resulting from that error. *Howard v. O'Sullivan*, **185 F.3d 721, 726 (7th Cir. 1999); and** *Coleman v. Thompson*, **501 U.S. 722, 750 (1991).** Absent a specific showing of cause and prejudice, "the cause and prejudice standard will be met in those cases where review of a state prisoner's claim is necessary to correct 'a fundamental miscarriage of justice.'" *Coleman*, **501 U.S. at 748.** This exception requires a colorable claim of actual innocence as well as an allegation of a constitutional wrong. *See Sawyer v. Whitley*, **505 U.S. 333, 339 (1992) (miscarriage of justice exception applies to "actual" innocence as compared to "legal" innocence).**

In an effort to avoid procedural default petitioner asserts that the failure of the courts to consider his claims is due to a "conspiratorial miscarriage of justice,' and the state courts and this court have a duty to scour the record for error, regardless of any default. **(Doc. 89, pp. 5 and 9-10).** However, petitioner's general, unsupported assertions cannot cure his default. Also,

petitioner does not actually assert his actual innocence of the crimes; rather, he asserts legal innocence due to an array of alleged procedural missteps. Therefore, petitioner has procedurally defaulted issues 1, 2 and 3, and the Court need not address the merits of those issues.[2]

Issue 4, regarding an allegedly erroneous jury instruction relating to petitioner's prior criminal record and the gun charge, is not cognizable under Section 2254. Respondent correctly argues that this is a matter of state law, not generally subject to review. *See Johnson v. Bett*, **349 F.3d 1030, 1034 (7th Cir. 2003);** *Searcy v. Greer*, **768 F.2d 906, 910 (7th Cir. 1985), and** *Davis v. Greer*, **13 F.3d 1134, 1139 (7th Cir. 1994).** Therefore, issue 4 need not be reviewed in any more depth.

Issues 5 and 6, regarding the prosecutor repeatedly asking petitioner whether State witnesses were lying, and defense counsel's failure to timely and effectively object, were fully presented and analyzed in the state court system. The prosecutor's line of questioning was found to be error[3], albeit *harmless error*, in light of the overwhelming evidence of guilt. (***See* Doc. 79-**

---

[2] With respect to the underlying ineffective assistance of counsel aspects of these issues, the Illinois Supreme Court has recognized that "a default *may* not preclude an ineffective-assistance claim for what trial counsel allegedly ought to have done in presenting a defense." ***People v. West*, 719 N.E.2d at 670 (citing *People v. Erickson*) (emphasis added).** "The success of such a claim, however, is dependent upon the strength of the supporting affidavits to defendant's petition, viewed in light of the original trial record." *Id.* Petitioner has never supported those claims with affidavits or other materials.

[3] Citing *United States v. Sanchez*, 176 F.3d 1214, 1219-20 (9th Cir. 1999), petitioner asserts it is reversible error for a prosecutor to question a witness about the veracity of other witnesses. This Court notes that the Court of Appeals for eh Seventh Circuit has generally recognized the potential for reversal based on that line of questioning. ***Gross v. Greer*, 773 F.2d 116, 118 (7th Cir. 1985).** For a conviction to be reversed for ineffective assistance of counsel, a two-prong test must be met: (1) the trial counsel's representation must fall below an objective standard of reasonableness, and (2) counsel's deficient performance must have prejudiced the defense. ***Strickland v. Washington,* 466 U.S. 668, 687 (1984).** If an ineffective assistance claim

**6, pp. 3-4).** However, the Court need not actually determine whether the Illinois appellate court unreasonably applied federal law (the Section 2254 standard of review). The pertinent question is whether a constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict." **Brecht v. Abrahamson,** 507 U.S. 619, 623 (1993); **Aleman v. Sternes**, 320 F.3d 687, 690 (7th Cir. 2003) (confirming this is the standard applicable after Section 2254 was amended in 1996 by the Antiterrorism and Effective Death Penalty Act(28 U.S.C. § 2254(d)).

The Court must inquire whether the prosecutor's statements were improper, and if so, was the defendant/petitioner prejudiced– the relevant question being whether the statements so infected the trial with unfairness as to make the conviction a denial of due process. **Darden v. Wainwright**, 477 U.S. 168, 181-182 (1986); and **Ruvalcaba v. Chandler**, 416 F.3d 555, 565 (7th Cir. 2005). Although the state appellate court determined the prosecutor's line of questioning about witness veracity was improper, the appellate court ultimately concluded the evidence of guilt was so overwhelming as to obviate the prosecutor's error.[4] This Court concurs with that analysis– any error was harmless. Not only did multiple witnesses testify to observing petitioner exiting the Morgan's residence carrying clothes and a gun, those items were found on the back porch of petitioner's residence, *and* petitioner's brother testified petitioner placed the items there. There is no cause to believe the jury disregarded its role in determining witness credibility

---

can be disposed of because the petitioner did not suffer sufficient prejudice, a court need not reach the issue of whether counsel's performance was deficient. **Id. at 697.**

[4]Due process requires the state to prove each element of the crime beyond a reasonable doubt (*In re Winship,* 397 U.S. 358, 364 (1970)), but circumstantial evidence can be used to satisfy that burden. **Holland v. United States,** 348 U.S. 121, 138 (1954).

and weighing the evidence due to the prosecutor's erroneous remarks.  And, in light of the aforementioned evidence, it is certainly reasonable to conclude that, despite his assertion of innocence at trial, that petitioner was guilty.  ***See United States v. Best*, 426 F.3d 937, 946-947 (7th Cir. 2005).**  Therefore, there is no need for further analysis of issue 6– the related ineffective assistance of counsel issue.  ***Strickland v. Washington,* 466 U.S. 668, 697 (1984).**

### Recommendation

For the aforestated reasons, it is this Court's recommendation that petitioner Adrian L. Jackson's amended petition for writ of habeas corpus **(Doc. 24)** be denied in all respects, and that final judgment be entered accordingly.

**DATED: July 31, 2006**

**s/ Clifford J. Proud  
CLIFFORD J. PROUD  
U. S. MAGISTRATE JUDGE**

### Notice of Response Deadline

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 6(e), the parties shall file any objections to this report and recommendation on or before **August 17, 2006**.